IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KAY D. HORTON and
JAMES B. HORTON,

        Plaintiffs,

  vs.                                            No. CIV 00-1161 LFG/RLP

PRUDENTIAL INS. CO., and
AETNA U.S. HEALTH CARE,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment [Doc. 29]. The Motion, Plaintiffs' Response, and Defendants' Reply were filed together as a package, in accord with the District's local rules. D.N.M.LR-Civ. 7.3(a). Oral argument is not necessary; the matter can be decided on the briefs. For the reasons given below, the motion is granted.

## Background

This case involves a dispute over health insurance coverage. Plaintiffs bring this diversity action against two insurance companies, alleging a number of state law claims. Defendants move for summary judgment, asserting that all of Plaintiffs' claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 20 U.S.C. §§ 1001 *et seq.*

Plaintiffs Kay D. Horton and James B. Horton ("the Hortons") are husband and wife. James Horton is an authorized agent of Farmers Insurance Company ("Farmers"). He and Kay Horton are employed by, and are the proprietors of, the Jim Horton Agency, Inc. ("the Horton Agency"). Kay

Horton works at the Horton Agency as a bookkeeper and insurance salesperson. The Horton Agency has two other employees, aside from the Hortons.

Farmers contracts with the two Defendant insurance companies to provide group life and comprehensive medical insurance for its authorized agents, including James Horton. Farmers is the group policy holder of the health insurance plan at issue in this litigation. The Hortons subscribe to this medical insurance, and they acknowledge that Horton Agency employees are eligible for the insurance, although no employees, aside from the Hortons themselves, have ever elected to enroll in the program. The Horton Agency, in effect, subsidizes the cost of health benefits under the program by agreeing that Farmers may deduct premiums for the benefit plan from the Agency's commission check.

In 1999 and 2000, the Hortons incurred expenses for medical care and submitted the bills to the Defendants for payment. They allege in their complaint that Defendants failed to pay all sums due under their contract for eligible medical expenses, made misrepresentations as to benefits, conditions and terms under the policy plan, failed to thoroughly investigate and pay claims, and failed to give equal consideration to the interests of their insureds, acting instead in their own financial interest. The Hortons' causes of action include counts for breach of contract, breach of implied covenant of good faith and fair dealing, violation of New Mexico statutes regulating unfair trade practices, violation of New Mexico statutes dealing with unfair insurance claim practices, intentional or negligent misrepresentation, and bad faith. They make no claim under ERISA.

## **Discussion**

The purpose of ERISA is set forth in its opening section:

> to protect interstate commerce and the interests of participants in

> employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b).

ERISA was intended by Congress to "comprehensively regulat[e], among other things, employee welfare benefit plans that, 'through the purchase of insurance or otherwise,' provide medical surgical, or hospital care, or benefits in the even of sickness, accident, disability, or death." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44, 107 S. Ct. 1549, 1551 (1987). In furtherance of this purpose of comprehensive federal control, Congress explicitly provided that ERISA shall preempt causes of action under state law and "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . .." 29 U.S.C. § 1144(a). The preemption provision of ERISA is "deliberately expansive," Pilot Life, 481 U.S. at 46, and "conspicuous for its breadth," FMC Corp. v. Holliday, 498 U.S. 52, 58, 111 S. Ct. 403, 407 (1990), reserving to federal authority the sole power to regulate employee welfare benefit plans.

> In sum, the detailed provisions of § 502(a) [29 U.S.C. § 1132(a)] set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

Pilot Life, at 54. The Supreme Court, consequently, agreed with the Solicitor General's argument in Pilot Life that ERISA was intended by Congress to be the "exclusive vehicle for actions by ERISA-

plan participants and beneficiaries asserting improper processing of a claim for benefits." Id., at 52. The Tenth Circuit has echoed the principle that the scope of ERISA preemption is very broad indeed. Straub v. Western Union Telegraph Co., 851 F.2d 1262, 1263-64 (10th Cir. 1988); Settles v. Golden Rule Ins. Co., 927 F.2d 505, 508, 510 (10th Cir. 1991).

As the cases discussed below demonstrate, in order for ERISA preemption to operate, the plan at issue must be an "employee benefit plan" as defined in ERISA, the state causes of action must "relate to" the plan, and the plaintiff must have standing as a "participant" or "beneficiary" to enforce the provisions of ERISA. Defendants' position is that the health insurance at issue in this case was an ERISA plan, and that it was established or maintained by the Horton Agency[1] for the purpose of providing medical and other benefits to the plan's participants and beneficiaries, including the Hortons. Further, Defendants contend that the state causes of action "relate to" the Horton Agency plan, and that the Hortons have standing under ERISA. The Court agrees.

A. The Plan at Issue Herein is an ERISA Plan.

ERISA governs "employee benefit plans," one form of which is an "employee welfare benefit plan" ("EWBP"). Peckham v. Gem State Mut. of Utah, 964 F.2d 1043, 1047 (10th Cir. 1992). An employee welfare benefit plan is "any plan, fund, or program which . . . is . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits . . .." 29 U.S.C. § 1002(1).

Expanding on this statutory definition, courts have identified five elements which distinguish

---

[1] Defendants have alternative theories regarding who the "employer" is in this case. Since the Court agrees with Defendants that ERISA preempts Plaintiffs' state law causes of action on the basis that the Horton Agency is the employer, the Court does not reach Defendants' other arguments.

4

an ERISA welfare benefit plan: (1) a "plan, fund, or program," (2) established or maintained, (3) by an employer, (4) for the purpose of providing medical, surgical, or hospital care benefits, (5) to the plan's participants or beneficiaries. Peckham, 964 F.2d at 1047, quoting from Donovan v. Dillingham, 688 F.2d 1367, 1371 (11th Cir. 1982). It is irrelevant whether or not the employer intended to be covered by ERISA; "[i]f a plan meets the five criteria outlined in Donovan it is governed by ERISA whether or not the parties wish to be subject to ERISA." Peckham, 964 F.2d at 1049 n. 11.

The "plan, fund, or program" requirement is met "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits." Peckham, 964 F.2d at 1048-49. In the present case, as was true in the Tenth Circuit's case of Gaylor v. John Hancock Mut. Life Ins. Co., 112 F.3d 460, 464 (10th Cir. 1997), "[u]nder this test, we are certain that a plan exists." A reasonable person would determine that the intended benefit of the plan at issue is medical coverage, that the intended class of beneficiaries consists of the employees of the Horton Agency and their dependents if the employees so choose, that financing comes from the employees and, to some extent, from the Horton Agency, which defrays a portion of the premiums, and that the procedures for receiving benefits are set forth in the "Farmers Agents Benefits Program -- Your Group Medical Program" guide (Doc. 29, Ex. A-3).

The requirement that the plan be "established or maintained" by an employer is meant to ensure that the plan is part of an employment relationship. Gaylor, at 464. The purchase of insurance by an employer for the benefit of its employees is substantial evidence of the establishment of a plan, Madonia v. Blue Cross & Blue Shield, 11 F.3d 444, 447 (4th Cir. 1993); LaMure v. Mutual Life Ins.

5

Co. of New York, 106 F.3d 413 (Table, text in Westlaw), No. 95-2172, 1997 WL 10961, at *3 (10th Cir. Jan. 14, 1997), but the overall test is whether the employer intended to provide benefits on a regular and long-term basis. Gaylor, at 464. The employer may "establish and maintain" a plan, even though it delegates part of the operational responsibility for the plan to an insurer. Id., at 464-65; Peckham, 964 F.2d at 1048 n.9; Robinson v. Linomaz, 58 F.3d 365, 368 (8th Cir. 1995) ("there is no requirement that the employer play any role in the administration of the plan in order for it to be deemed an EWBP under ERISA"). Under this test, the Horton Agency, as an employer, "established or maintained" the health care coverage for its employees, for the purpose of providing medical, surgical, or hospital care benefits.

Finally, there must be "participants or beneficiaries" for the plan to be considered an ERISA plan. It is true that no Horton Agency employee, other than the Hortons themselves, ever actually enrolled in the Farmers medical coverage program. However, there is no question that Horton Agency employees were eligible for coverage under the plan and could have enrolled had they so elected. [Deposition of James B. Horton, Ex. A-1 to Doc. 29, at 9, 29-30, 55-57, 71; Deposition of Kay Horton, Ex. A-2 to Dock. 29, at 19, 48; Farmers Agents Benefits Program - Your Group Medical Program, Ex. A-3, at 5].

A plan will be considered an ERISA plan if one or more employees, other than the owners of the business, are eligible for coverage; it is not necessary that such employees actually enroll in the plan. Madonia, at 448. Even in the case of a small company which has, aside from the owners, only one full-time employee "who was included in the policy but did not expect health benefits from [it] . . .but was only included in order for the Robinsons [the owners] to obtain policy coverage for themselves," the plan is considered to be an ERISA plan, since the one non-owner employee was

6

eligible for coverage. Robinson, at 367. A number of cases have held that a plan which covers owners, whether partners, sole owners, or shareholders, can be an ERISA plan so long as at least one other employee is also covered, thus ensuring that the plan is one which "benefit[s] employees." Vega v. National Life Ins. Svcs., Inc., 188 F.3d 287, 293, 294 & n.6 (5th Cir. 1999); *see also*, Peterson v. American Life & Health Ins. Co., 48 F.3d 404, 407-08 (9th Cir. 1995); Barringer-Willis v. Healthsource North Carolina, Inc., 14 F. Supp. 2d 780, 782-83 (E.D.N.C. 1998).

The Court finds that the plan at issue in this case is an ERISA plan, under the tests set forth above.

B. The Hortons' State Law Causes of Action "Relate to" the Plan.

The preemption provision of ERISA provides that the federal scheme "shall supersede any and all State laws insofar as they . . . relate to any employee benefit plan." In this context, the term "State laws" includes not only state statutes but state decisional law as well. 29 U.S.C. § 1144(c)(1); Pilot Life, 481 U.S. at 48 n.1. Thus, the Hortons' common law claims, as well as their causes of action based on state unfair practices statutes, must "relate to" the ERISA plan in order for preemption to apply.

The statutory phrase "relates to" is given a "broad, common-sense meaning." Settles, at 508. Preemption will occur "if the factual basis of the cause of action involves an employee benefit plan," Id.; Kelso v. General Am. Life Ins. Co., 967 F.2d 388, 390 (10th Cir. 1992). A state law can be found to "relate to" a plan, even it is not specifically directed toward the regulation of an ERISA plan, or affects the plan only indirectly. Airparts Co. v. Custom Benefit Svcs. of Austin, 28 F.3d 1062, 1064 (10th Cir. 1994). It is only if the injury alleged is "wholly remote" from the benefit plan that preemption will not apply. Settles, at 509.

7

All of the Hortons' causes of action are based on allegations that Defendants failed to provide them with certain medical benefits as required under their health insurance plan. This is a classic case for application of ERISA. "[C]ommon law causes of action . . . based on alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for pre-emption" under § 1144(a). Pilot Life, 481 U.S. at 48. ERISA "unquestionably preempts state law claims involving some aspect of the distribution, processing or entitlement of benefits or administration of claims or funds under a plan, regardless of the party bringing these claims." Woodworkers Supply Inc. v. Principal Mut. Life Ins. Co., No. Civ 95-1583, slip op., at 4 (D.N.M. Feb. 14, 1997). Artful drafting of one's pleadings will not change the true basis of the claim. Here, the Hortons' dispute arises out of the failure to provide medical benefits to which the Hortons claim an entitlement.

Common law claims under state law for breach of contract or breach of fiduciary duty, related to the improper processing of a benefit claim, are almost universally considered to be "related to" an ERISA plan and thus preempted by ERISA, Cannon v. Group Health Svc. of Oklahoma, Inc., 77 F.3d 1270 (10th Cir. 1996), as have claims for breach of the implied covenant of good faith and fair dealing or breach of insurer's fiduciary duty, Pitman v. Blue Cross & Blue Shield, 24 F.3d 118 (10th Cir. 1994); misrepresentation, Kelso, *supra*; bad faith denial of insurance benefits, Hollis v. Provident Life & Accident Ins. Co., 259 F.3d 410 (5th Cir. 2001); fraudulent denial of insurance coverage, Settles, *supra*; and fraudulent inducement to enter into an insurance contract, Engelhardt v. Paul Revere Life Ins. Co., 139 F.3d 1346 (11th Cir. 1998). In addition, claims based on state statutes governing the insurance industry have also been held preempted, in spite of ERISA's "saving clause," which reads:

8

> Except as provided in subparagraph (B) [the "deemer clause"], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

29 U.S.C. § 1144(b)(2)(A). Courts have regularly rejected arguments made by plaintiffs seeking to avoid the effects of ERISA preemption, that the saving clause "saves" their causes of action based on state statutes prohibiting unfair practices in the insurance industry.

For example, the plaintiff in Kelley v. Sears, Roebuck & Co., 882 F.2d 453 (10th Cir. 1989), contended that his cause of action under a Colorado statute defining and prohibiting unfair or deceptive practices in the insurance industry was preserved by the saving clause. The Tenth Circuit rejected this argument, applying the three-part test set forth by the Supreme Court in Pilot Life. Under that test, a cause of action under state law falls under the "business of insurance," and thus is saved from preemption, if it meets three criteria: (1) if the state law has the effect of transferring or spreading a policyholder's risk; (2) if the state law is an integral part of the policy relationship between the insurer and the insured; and (3) if the state law is limited to entities within the insurance industry. Kelley, at 456.

The Hortons bring claims under the New Mexico Unfair Practices Act, N.M.S.A. §§ 57-1-1 *et seq.*, and under the New Mexico Insurance Code, which they cite generally in their complaint as Chapter 59A, N.M.S.A. The Unfair Practices Act clearly does not meet the three-part test, as that statute is not "limited to entities within the insurance industry" but rather applies to "any trade or commerce." N.M.S.A. § 57-12-3. The Hortons' claim under the Insurance Code alleges that Defendants, among other things, intentionally misrepresented the benefits, conditions and terms of the policy, failed to disclose material facts concerning their intent not to pay benefits, misled the

Hortons into believing they were covered, failed to affirm or deny coverage within a reasonable amount of time, and failed to pay for reasonable and necessary medical treatment.

As was true in Kelley, *supra*, this Insurance Code cause of action is preempted by ERISA. Although the statute under which is the claim is brought is limited to insurance industry entities and thus meets one requirement of the three-part Pilot Life test, it fails the other two parts of the test. The Tenth Circuit noted that the insurance statute at issue in Kelley "does not spread policyholder risk; rather, it prevents and remedies unfairness in the insurance industry" and, in addition, the statute "is not integral to the insurance relationship, since it does not control the substantive terms of the insurance contract itself." Id., at 456. The same is true in the present case.

*See also,* other Tenth Circuit cases holding claims under state insurance statutes are not preserved by ERISA's saving clause: Kelso, *supra* at 391 (holding a claim under an Oklahoma statute defining the status of an insurance agent is not saved, since the saving clause is trumped by the fact that the claim "relates to" the benefit plan); Cannon, *supra* at 1275 (similar); Gaylor, *supra* at 466 (similar; the Court also notes that, because ERISA's civil enforcement provisions were intended to be the exclusive vehicle for causes of action asserting improper processing of a claim for benefits, such a claim is preempted since it "would pose an obstacle to the purposes and objectives of Congress"). *And see*, Nechero v. Provident Life & Accident Ins. Co., 795 F. Supp. 374 (D.N.M. 1992) (causes of action under the New Mexico Unfair Practices Act and Unfair Insurance Practices Act, alleging failure to pay medical benefits under a health insurance policy, are not saved; "[s]tate statutes imposing duties on insurers are also preempted when the duties relate to employee benefit plans and would otherwise infringe on ERISA's civil enforcement provisions").

Under the authority noted above, all of the Hortons' claims "relate to" the ERISA plan at issue herein, and none of them falls within the saving clause.

C. The Hortons Have Standing Under ERISA.

Having found that the Horton Agency plan is an ERISA plan, and that all of the Hortons' causes of action "relate to" the plan since they are based on improper processing of insurance benefits, preemption of the state law claims in favor of an action under ERISA is required, so long as the Hortons are proper parties to bring an ERISA action. Peterson, at 408.

A civil action under ERISA "may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a). A "participant" is "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). A "beneficiary" means "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

The Hortons contend that they have no standing under ERISA, because as owners of the Horton Agency and independent contractors for Farmers, they do not fall within the definitions of "participants" or "beneficiaries" of the plan. Defendants argue that even if the Hortons do not qualify as participants, they can nevertheless be ERISA "beneficiaries" as that term is defined in the statute. Thus, they need not be employees/participants, and their purported status as independent contractors is therefore irrelevant. The Court agrees.

Defendants' analysis starts with the plain language of § 1002(8), which provides that a person

11

"designated by . . . the terms of an employee benefit plan, who is . . . entitled to receive benefits thereunder" is considered to be a "beneficiary." The employee benefit plan at issue herein states that eligible persons include Farmers agents or district managers and their employees. (Ex. A-3 to Doc. 29). As Defendants point out, the Hortons' complaint revolves around their attempt to obtain benefits from their employee benefit plan; the Hortons thus contend, necessarily, that they are designated by the plan to receive benefits.

A number of courts have found, using this plain statutory language as a starting point, that business owners of various sorts are considered to be "beneficiaries" and thus eligible to sue under ERISA. In Peterson, at 409, a case involving a partner in a firm claiming benefits under the firm's health insurance policy, the Ninth Circuit noted:

> Peterson apparently would have us limit the definition of "beneficiary" to person such as spouses and dependents, designated by participants to receive benefits. We conclude, though, that any person designated to receive benefits from a policy that is part of an ERISA plan may bring a civil suit to enforce ERISA. To hold otherwise would create the anomaly of requiring some insureds to pursue benefit claims under state law while requiring others covered by the identical policy to proceed under ERISA. Such a scenario would frustrate Congress's intent of achieving uniformity in the law governing employment benefits.

The Peterson court relied on an earlier ruling, Harper v. American Chambers Life Ins. Co., 898 F.2d 1432 (9th Cir. 1990), in which the court held that partners and spouses of partners, while not "employees," are nevertheless beneficiaries, since they fall within the statutory definition of persons designated by the terms of the employee benefit plan: "By the plain terms of the statutes defining 'person' and 'beneficiary,' then, the Harpers are ERISA beneficiaries under the ACLI policy. We must regard the 'plain language' of the statute as 'conclusive.'" Id., at 1434. The same "plain

language" reasoning was persuasive is Hollis, at 415; Engelhardt, at 1350-51; and Wolk v. UNUM Life Ins. of America, 186 F.3d 352, 355-56 (3d Cir. 1999). In Prudential Ins. Co. of America v. Doe, 76 F.3d 206, 208 (8th Cir. 1996), the Eighth Circuit likewise reversed a District Court's ruling that a controlling shareholder in an incorporated law firm could not be a participant or a beneficiary based on his status as an "employer" rather than an "employee. Relying on the circuit's recently-decided opinion in Robinson v. Linomaz, *supra*, the court declined to rule on the employer-employee distinction, finding instead that the shareholder was a beneficiary because he was "designated to receive benefits by the terms of the employee benefit plan," and thus the court found no need to consider the employer-employee distinction.

A number of courts have addressed the "anti-inurement" provision of ERISA, in the context of a business owner's eligibility for benefits under an ERISA plan. This provision states that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan," 29 U.S.C. § 1103(c)(1). The consensus of courts considering this provision is that it is meant to protect "plan assets" from misappropriation by plan administrators and employers, that recovery of health insurance benefits, such as those sought by the Hortons in this case, would come out of the general funds of the insurer rather than from "plan assets," and that therefore:

> no danger of self-dealing or misappropriation arises because Engelhardt's status as a shareholder does not put him in a position to exercise control over Paul Revere's [the insurer's] funds. Engelhardt's anti-inurement argument provides no basis or reason to depart from ERISA's straightforward definition of beneficiary. We thus find that Engelhardt is a beneficiary within the meaning of § 1002(8).

Engelhardt, at 1351. Similar cases include Wolk, *supra*, at 357 ("ERISA's anti-inurement provision is directed at plan assets – i.e., 'assets accumulating in trust and pension funds" and is not applicable to payment of benefits under a disability policy); and Prudential, *supra*, at 209 ("the anti-inurement provision does not seem directly applicable to the collection of health insurance benefits . . . [rather,] the provision appears intended to restrict the use of assets accumulating in trust and pension funds").

Plaintiffs cite Peckham v. Board of Trustees of the International Brotherhood of Painters, 653 F.2d 424 (10th Cir. 1981) as support for their argument that dual status persons such as sole proprietors, or employer/employees, are not eligible for inclusion in a benefit plan. However, the plan at issue in Peckham was an employee pension benefit plan, not a welfare benefit plan, and as noted above, the anti-inurement provision is clearly applicable to pension plans whereas it does not cover health benefit plans.

At least two courts have gone even further and held that sole shareholders can be considered not only "beneficiaries," but also "participants" in an ERISA plan. Vega, *supra*; Madonia, *supra*. That question need not be reached in this case, however, as the Court finds, under the authority and reasoning stated above, that the Hortons are "beneficiaries" of the Horton Agency plan and thus would have standing to sue under ERISA. The question whether the Hortons are independent contractors is immaterial to their standing as beneficiaries, since they come within the plain meaning of the statute:

> We said [in Weaver v. Employers Underwriters, Inc., 13 F.3d 172 (5th Cir. 1994)] that Weaver was not a participant precisely because he was an independent contractor. After all, ERISA defines a participant as "any *employee* [etc.] . . . However, we gave an entirely different reason why Weaver was not a beneficiary . . . Weaver was not a beneficiary because the benefit plan did not designate him as a beneficiary . . . [I]mplicit in our holding in Weaver is that an

14

> independent contractor can be a beneficiary so long as he is a person "who is or may become entitled to a benefit" under this plan. Therefore, Hollis's independent contractor status does not preclude him from being a beneficiary.

Hollis, at 415.

## Conclusion

The Court finds that the Horton Agency, by making health and medical insurance available to its owners and employees, established and maintained an employee welfare benefit plan under ERISA, that the claims brought in this action "relate to" the plan, and that the Hortons have standing to sue under ERISA; therefore, ERISA preempts all of the claims brought in the Hortons' complaint. Because the Hortons' claims are governed by ERISA, which preempts all of the claims asserted in the complaint, the Court will grant Defendants' motion for summary judgment. However, the Hortons will be given an opportunity to amend their complaint to state a cause of action under ERISA, if they so desire.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment [Doc. 29] is granted.

**IT IS FURTHER ORDERED** that Plaintiffs will have until October 19, 2001 to file an amended complaint asserting a cause of action under ERISA. If Plaintiffs do not amend by the date indicated, judgment will be entered in favor of Defendants on all of Plaintiffs' claims.

Lorenzo F. Garcia
United States Magistrate Judge